I'm here to represent officers Steinkamp and Minnehan in this action brought by Mr. Fugenschuh concerning a traffic stop that occurred in Des Moines, Iowa. There are three causes of action that are still at issue in this case. It was a multi-count petition or, excuse me, complaint, but many of those issues have been dismissed. The three issues that we have left before us is a Fourth Amendment claim for lack of probable cause, a Fourth Amendment claim for excessive force, and then a First Amendment of retaliation claim. And I walk through those three things because there's an interrelationship between them that's important to understand. It wasn't necessarily clear in the briefing and it's something that the Appley had brought up in their response. In particular, what the United States Supreme Court cases say is that if there is not a violation of the law in terms of lack of probable cause or excessive force, then you can't maintain a First Amendment retaliation case. A First Amendment retaliation case is a but-for causation standard, and if the other conduct that's alleged in that circumstance is legal, then there cannot in fact be a violation of the First Amendment in that circumstance. Counsel, on which claims did Officer Steinkamp seek summary judgment? Well, that's a great question. I believe that he sought summary judgment on all of the claims, but I could be wrong about that. But from our perspective, this is a case about whether or not the district court properly handled the qualified immunity questions. The very first issue is the probable cause question. Now, the district court specifically sets out the standards for qualified immunity in its decision. However, the district court's analysis of the probable cause question is limited to, as far as I could tell, the first question in qualified immunity. Two questions being, first, was there a constitutional violation or is there a genuine issue of material fact that there's a constitutional violation? And the second one is, was there a violation of a clearly established right? Qualified immunity is designed to prevent or protect officers who are all but the most incompetent of officers. It's designed to discuss those circumstances so that you don't have a discussion of a negligent violation of the Constitution. You need more than that. You need intent. And that's why qualified immunity exists in the way it does. And what this circuit court has said and other courts have said, including the United States Supreme Court, is there's a difference between actual probable cause and arguable probable cause. And the issue with the district court decision in this case is that its analysis ends at actual probable cause. It looks at the first question of qualified immunity and says, well, I think there's a material fact that reasonable people could believe there was actual probable cause and reasonable people could also believe that there was not actual probable cause. But then it fails to take the additional step of saying, well, does that mean that there's arguable probable cause? And in fact, I look at the district court's decision in this case where the district court sets out and says, oh, here's all the pieces of evidence that would lead a reasonable person to believe there was probable cause here as an admission that there is in fact arguable plausible cause in the circumstance. And in that circumstance, both Officer Minahan and both Officer Steinkamp should have been entitled to qualified immunity and that cause of action should have been dismissed against them. So you're saying that same evidence doesn't create a genuine issue of fact as to arguable probable cause? Correct. The idea being this, is that to have a genuine issue of material fact, you both have to have a factual dispute and then it has to change the legal analysis, right? Why doesn't it change the legal analysis? Because when you talk about arguable probable cause, it's a question of whether or not, it's not based on the idea that an officer engages in the fine weighing of contrary evidence and actual evidence in the split second decision they make when they determine whether or not they have probable cause. It's very easy to sit in the office, in your office as a judge, and look at the video over and over again and say, you know what, I don't think there's actual probable cause to say that Mr. Fugenschub cut off another individual. It's a lot harder to do that sitting in a patrol car in a split second while you're following somebody because they've acted hostile towards you from their vehicle. And in that circumstance... Do you think this one does take, is this a split second kind of case? In terms of determining whether or not he cut someone off, yes. I guess, and I know what you're saying. I mean, you have to make that decision and you do it in a second maybe. But it just seems a little different than sort of those quick, quickly moving situations where you don't know what's going to happen next. And this is kind of a slow walk, right? And then they think, well, yeah, that looks like, cut him off, let's go. I guess I'm wondering if that factors in because it just doesn't seem like it's quite the same kind of split second decision. I think that's a really interesting question in that it gets to what I started with, right? It's the idea of whether or not these officer's decision was colored by the first amendment acts. Why are they following this individual for 11 blocks, 12 blocks, whatever it is the district court concludes it is. Is it because he gave them a hard glare and then they flipped them off while he was following them? I'm certain that's part of the factor. But under Nieves v. Bartlett, which we cite in our reply brief, the officer can have both circumstances, right? The officer can be upset that Mr. Fugin, she was saying terrible things about them and also not be liable for first amendment retaliation. But to your question, when they're trying to decide whether or not he's cut someone else off, they're sitting there and a decision that the expert testimony says turns on about 1.649 seconds. Don't we have to look at the totality of the circumstances even for arguable probable cause, which would include the whole scenario and testimony and all the facts? Absolutely. Of course you do. Not just the split second. No, I agree with you. You do have to look at the totality of those circumstances. But the question here for me has always been, is the argument there's a lack of probable cause for following him for 12 blocks? Because I don't think that's an arrest. You can look at those circumstances and the totality of those circumstances, but what you have to get to ultimately is what is exactly that he was charged with? Why did they stop him? Not why did they follow him? Why did they stop him? And I know they want to confuse those issues, but you can't do that. Let's drill down on that. Having watched the video, and I agree with you, we can sit in our office. It makes a difference. But the turn is made, and I didn't time it, but I basically counted four seconds before I saw the other car. How could that even be arguable probable cause of creating an imminent danger, I think, is the requirement? I think that's a great question. I think it has to do with the speed of the car that we can't see. I mean, what you get in that four seconds is you have a car that, as my understanding of the testimony is, stepped on its brakes before it made it into the intersection. And then it appears in our video because it slows down. Where does that come from? Because when I saw the video, it appeared to me there was a car on the left side of the cruiser that would have blocked, that certainly blocked my view of the car coming in. Right. So how do they know that? What's the evidence that there was a slowdown? My understanding is that's Officer Minahan's and Officer Steinkamp's testimony. That their statement is that the person who was approaching the intersection had to step on their brakes. They, in fact, I think say that on the video. The person had to step on their brakes, and we believe that that creates probable cause. That car didn't block it, and they certainly didn't see brake lights. Well, I think that's the question there. I think they have to have seen that vehicle slow down. Does it block the video? Yes. Does it block Minahan and Steinkamp? It doesn't seem like it does, right? I mean, that's the issue that we've got here is that you've got Minahan and Steinkamp who both say it contemporaneously. Do you see he cut that guy off? He had to brake and do it. They're consistent throughout the entire time that they're testifying it, both in the video and both in their testimony that they provide trial. And the video that's provided is inconclusive as whether or not that person had to stop. And so the question is, is how do you get to the point where you say, well, they don't have arguable probable cause? If you don't have the evidence that says, well, they're wrong, they're flatly wrong, then how do you get to the argument of, well, they must be wrong? It's pretty close. I mean, it's not like, you know, he's here. It's turn one, two, three, four. Then I see the car. That doesn't seem like arguable probable cause of an imminent, you know, dangerous situation. No, and I understand what you're saying. And my position on it is the video is inconclusive. And the problem is you just don't know how fast that car was going and where it slowed down and stopped. Our position is, is you can't determine arguable probable cause based on the fact that somebody happened to be hyper-attentive and step on their brakes when they were, in fact, cut off. Because I was thinking about my own driving when I thought about this issue. Are there circumstances where I've been cut off and I've slowed down and even stopped before I entered an intersection? Yeah, I do think there are. And it really depends on how fast that other car was driving. And in this circumstance, the only evidence to support or discuss that decision comes from Minahan and from Steinkamp. There isn't contradictory evidence other than supposition about how far, how far from the intersection or how close to the intersection that other car stopped. Well, when Mr. Fugentshu does turn and there is a, there is a pause before you see another car and couldn't you, who knows why they're braking? I mean, to me, there wasn't because he was already gone. I was like, well, I don't know why they're braking. If in fact, he was braking. Well, that was a question I had. Is, are we allowed to consider that he may have slowed down because he saw a police car sitting at the intersection? Well, that's the interesting part about not having testimony or evidence on that issue, right? Because then you're left speculating about it, right? But I'm not sure that just the fact he slowed down, you know, is ergo probable, arguable probable cause. Well, and that's why our position has to do very much with the idea that it's a split second decision, right? They didn't sit there and count one 1,000, two 1,000, three 1,000, four 1,000 while watching a video in their office, right? They don't have the time to do that. They see something. They think it's that circumstance. They make a stop because they believe they have probable cause and they can be wrong. I think there's a lot of evidence that they're wrong in this circumstance. That's what we're talking about here today. But the question is, is they, are they wholly incompetent? And I don't think they're wholly incompetent because they've, they've miscounted one second versus four seconds. I just don't think that gets us to that circumstance. So I did want to reserve some time for rebuttal if that's all right with you. Thank you. Thank you, Mr. Updegraff. Yep. Ms. Messimer. May it please the court and counsel. I think running throughout the briefing in this case is a misunderstanding of just fundamental summary judgment and qualified immunity standards. Um, the appellant's arguments would make sense to me if the court had granted summary judgment in Mr. Figinchu's favor. But that's not what happened. The court said there were fact questions and there certainly are fact questions. Um, I think it's very notable that at no point during the appellant's argument was the actual language of the statute discussed. This is not a very complicated statute. It says, was there an immediate risk of a hazard during the time when the other car is in the intersection? And the video clearly shows that wasn't the case, or at minimum, there's a jury question there. The court said based on officer's perception in their expert report, we'll give them a fact question on whether there was probable cause here. But looking at the statute, certainly a reasonable jury could say there wasn't an objectively reasonable basis for someone to think that this individual violated the law. Um, and that's what we're talking about is objective reasonableness. That's what we talk about when we talk about arguable probable cause too. But before I even talk about that, I would point out it wasn't raised in their brief, arguable probable cause. That wasn't anything they argued on appeal here. There was an argument about the district court wrongly relying on the original charge versus the change to the charge, and that was pretty much it. So all of these arguments that are being made to the court now, or the argument, really aren't what their brief was about. Their brief was about the district court saying that the original charge was wrong, which isn't really what the district court did. The district court noted that in a footnote and then talked about the more applicable charge, which is this one, was there an immediate hazard during the time which the following car was in the intersection? And that's the one that defendants rely on, correct? Correct. They conceded that the original charge that they charged Mr. Fickenshue with and that he went to trial on was incorrect, and then at trial it was modified kind of at the end to conform to the evidence to this immediate hazard during the time when they're in the intersection. So that's really the statute we're all talking about here. And could a reasonable jury say that the officers didn't have probable cause in that circumstance? Yes, a reasonable jury could this video. And I don't want to forget the fact I also have an expert report. They have an expert saying that there would have been a collision imminent. I've got an expert report that says, no, there wasn't. So there's all these dueling experts, but really the video would be the main thing I would rely on when I'm talking to the jury because common sense would show, look at this, count the seconds, you're a driver, was there a risk of an imminent hazard? And there wasn't. So their expert report and what the officers say happened, that isn't enough for them to be granted qualified immunity when you also have my expert. You have Mr. Fickenshue's testimony and you have the video. Those are all certainly sufficient to create a fact question. One point I do want to make is the appellant didn't mention, but we also have an assault and battery claim, which was count 13, and that's still alive, but it's not at issue and appeal given the qualified immunity standards. Is excessive force still alive? Excessive force, yes, is still a live claim. What about Officer Steinkamp's retaliation claim? Was that the subject of a motion for summary judgment? You asking that question makes me want to double check. I don't have the district court briefs downloaded with me, so I couldn't double check that, but my assumption was it was, because there were these overlapping briefs between the city of Des Moines and the two officers. If it wasn't, that would be a good point, but I'm not sure. But certainly on the retaliation claim, there's extremely strong evidence to submit that claim to a jury. The officer's quotes during the stop itself are egregious. Officer Steinkamp told Mr. Fickenshue, we don't care about this petty crap. We don't deal with that crap. When you act from the get-go, when you're sitting there and looked at us real hard and started flipping us off, and they tell his family that they're arresting him because of his disrespectful behavior, and Officer Minahan says, this whole thing, it could have been a verbal warning at best. Steinkamp says, if that, Minahan, if that. We might not have even stopped him. It just keeps going. Minahan says, there's a certain point where the level of disrespect is so high that there's not going to be any breaks from us. They tell the family, Steinkamp says that Mr. Fickenshue's going to jail for marijuana and improper turn, or something like that, and we don't even care about that kind of stuff. Even if the court were to say that there was probable cause for this stop, which would knock out my retaliatory stop and my retaliatory arrest, I've conceded my retaliatory arrest claim based on the probable cause for marijuana in the car, but there still would be a retaliation claim for putting him in handcuffs, bending him over the car and smashing his face in the car hood, and for shoving him down. It's not even briefed by the appellant, so I'm kind of just arguing against myself right now, but there's very strong evidence to support a retaliation claim. Let's talk about the excessive force for a minute. It is, of course, a relatively minor offense that he's pulled over for, but he's awfully belligerent, and then when they put him in handcuffs, he starts reaching for his wallet. They tell him not to. They lift his arms, which forces his head down. I'm not sure, having watched the video, I'm not sure it's fair to characterize it as smashing his face into it. They lift his arms to keep him away from his pocket, which they told him to quit doing, and then I would say maybe they were a little rough throwing him into the back of the car, but tell me how that amounts to an excessive force claim. I certainly understand that the level of force used is lower than maybe some cases, but, and he wasn't slammed into the car, I agree, but the way his arms are bent up painfully behind his head makes him go into this position where he is face down on his car, smushed against his car. That's after they told him several times to quit reaching for his wallet, and he keeps reaching for his wallet, so they lift his arm away from that. That seems reasonable. I disagree a bit, based on my recollection of the video, is that they ask him where his wallet is, he says his pocket, and I think maybe Officer Minahan then asks, where's your ID, and he kind of like goes towards there in response to their questions, and then he says, I think that's when the officer tells him not to and bends his arms up. I don't think that there was really a don't do that and an opportunity to comply. It was them asking the questions, what I perceive to be a indicating where his wallet is, and then they put him face down. But then moving to getting pushed down to the police car, that certainly would be a fact question for a jury as well. I did, I think, a related question, and somewhat to my surprise, I'm not sure they developed the de minimis injury argument. Was that properly before us on appeal? It was in their reply brief. My understanding of the case law is that that is not sufficient to negate an excessive force claim. Even if someone isn't injured, that doesn't mean that it wasn't excessive force. It's a factor, I think, for the jury to consider, and kind of goes into the gram factors, but it's not, the fact there was not an injury is not sufficient to grant qualified immunity or dismiss a claim on that basis. But based on what happened, and there are other cases similar to this, because, I mean, it didn't happen here, but if you're yanking somebody's arms up like that, it could hurt them. It could pull something. If you shove somebody down and they hit wrong or sit on their hands, that could hurt something. It didn't here, but that's something the jury can think about, is like, what could happen? Is this objectively reasonable under the circumstances? When you are restrained like that, case law says there's not really a good reason to use force because you don't present a threat and because you can't self-protect. You can't catch yourself from falling. If you would have shoved him forward, you couldn't, you'd fall in his face. So under the case law, that's a sufficient use of force to generate a jury question here, and the de minimis injury doesn't change the analysis at all there. Yeah, speaking of that, what is your best case that suggests the facts here that it's a clearly established violation on the excessive force claim? I don't have a case handy in my, I didn't brief this very much because they didn't brief it, but my underlying district court brief has a number of cases with more factually akin situations, and I'd also make the point here, they did not argue on appeal that any of this was not clearly established. They're more talking about the underlying, was there a constitutional violation? My position is that has been waived. Most of the things I'm talking about before you today, I think, have been waived because they were not raised at all or were only mentioned a little bit in the reply brief in response to me pointing out the fact that they were waived. But there are a lot of cases that have to do with retaliation under these situations, under this kind of situation, and with pushes and shoves being sufficient, particularly when you've got someone, at minimum, there's a fact question that he was not resisting, that he was cooperative. He was cussing a blue streak, but it was in a surprisingly calm way, I would say, that these were delivered. And the cussing didn't start until after he hadn't been told why he was stopped. He was asked to get out right away and was put in handcuffs right away. He was bent over the car. That's when the cussing started, is when he was over the car with his arms behind his back. Certainly, I wouldn't recommend cussing at officers that way, but a person could probably understand how you'd be pretty frustrated when put in that situation. And it might be outside the record, but the reason that he even was flipping the officers off was because he perceived the officers were following him with their brights on. So it's kind of this whole course of conduct of how he felt he was being treated by these officers, which eventually got to this breaking point when he had his hands up behind his back and the officers were treating this stop not in a normal way you would treat a traffic violation. Even just getting him out and handcuffing him, those things from the jump would be things a normal jury member would think this is abnormal. Unless the court has any questions, I think that this case has been very anemically briefed to the point where there really are hardly any issues for the court to consider, and there's certainly not a reason to reverse the district court's decision given all the fact issues. You had mentioned some of the statements that one or both of the officers made to him or his family, and one of them was, we don't really care about this kind of thing. I'm presuming the idea is that they don't care about these kind of turns and cutting people off. Was there more testimony about that, about how often they actually pull someone over for this kind of an infraction or a sort of traffic violation, whether this was truly a one-off? We're getting outside the record here, but these were officers assigned to the summer enforcement team. That would be in the record. That did a lot of pre-textual stops. But nothing about this particular statutory violation? Correct, although I would say the fact that they didn't know the statute to charge it under, and they don't know the language of the statute, would suggest that it's not something that they've probably ever pulled somebody over or certainly never written a ticket for. Thank you. Thank you. Rebuttal, Mr. Optimer. Thank you, Your Honor. Hey, I'm here to talk to you about the excessive force claim because I hadn't gotten an opportunity to do that. The first part of it is, I would be remiss if I didn't point out that I have appeared for Officer Minahan here, as well as Officer Steinkamp. My office represented Officer Steinkamp in the underlying case, but I was asked to argue on behalf of Officer Minahan. When it comes to excessive force, I struggle to see how Officer Minahan could be liable for excessive force in any circumstances. I don't recall anywhere in the video that Officer Minahan even touches Mr. Fugenshue. It seems to me that the officer who is touching Mr. Fugenshue is Officer Steinkamp. And the idea that Officer Minahan would not be entitled to a dismissal of a claim for excessive force when he never laid hands on Mr. Fugenshue is hard for me to fathom. Did Officer Minahan make this argument to this court? I didn't represent Officer Minahan before that circumstance, but it is certainly part of... Does that mean you don't know? I don't know the answer. I do not know the answer. I will say, though, I believe that when you're reviewing a motion for summary judgment by a district court, you do so de novo. So in those circumstances, I think you can rule and affirm on any grounds you find are compelling under the circumstances. That would be reversal. Excuse me, reversal. Thank you. We can't reverse on any circumstance. Oh, I'm sorry. We could affirm, but you lost below, so... Yes, thank you. Okay. I appreciate it. Did the district court make any findings as to the presence of disputed facts as to the other officer? I don't believe that the district court looked into whether or not Officer Minahan had touched Fugenshue, if that's your question. If you don't have any other questions, I'll cede the rest of my time. Thank you. Thank you. The court appreciates both counsel's appearance and argument today. Case is submitted and will issue an opinion in due course. Ms. Henderson, that completes our docket for the day? Yes, ma'am. Thank you. We'll see you at 9 a.m. tomorrow morning.